UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL S. ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 2572 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| NORTHEASTERN ILLINOIS UNIVERSITY | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael S. Alexander ("Alexander") has sued his employer and eleven of its current and former employees alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and various state statutes. Before the court are a motion to dismiss [151] and a motion to strike [154] filed by defendants Northeastern Illinois University ("NEIU"), Debra Cokley ("Cokley"), Gary Bryan, Joseph Kish, David Jonaitis, Margo Smith, Elisabeth Murray (deceased), Murrell Duster, Ralph Zia, Karen Cole, Jeff Brown and Gary Hamburg (collectively, the "Defendants"). For the reasons stated below, the motion to dismiss is granted and the motion to strike is granted in part and denied in part.

### I. BACKGROUND[1]

---

[1] The factual allegations are taken from the second amended complaint and are deemed true for purposes of this motion. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (noting that all reasonable inferences must be drawn in favor of plaintiff). As a *pro se* plaintiff, Alexander is entitled to a liberal reading of his complaint. *See Greer v. Board of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) ("[W]e liberally construe the pleadings of individuals who proceed *pro se*."); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) ("It is the well-settled law of this circuit that *pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers."). The facts have also been fully set forth in prior opinions. *See, e.g.*, Alexander *v. Northeastern*

Alexander is a carpenter. He has worked for NEIU since 1989. In late 1994, his supervisor, Cokley, attempted to kiss him. He rejected this and subsequent sexual advances. In 1996, Alexander filed an internal grievance with NEIU about Cokley's sexual harassment. In the ensuing proceedings, several managerial employees of NEIU misrepresented facts, falsified records, or colluded in these misrepresentations. In March 1998, Alexander was informed that his grievance was denied because it was baseless.

Alexander alleges that, following these proceedings, Cokley and several current and former NEIU managers retaliated against him for complaining about Cokley's conduct. This retaliation included the denial of his right to appeal the grievance decision, suspension without pay, delay in reimbursement for sick pay, writing baseless unfavorable reports about him, loss of certain privileges as a result of these unfavorable reports, denial of his right to run for and serve on the Civil Service Council, and refusal to accommodate his injuries. On April 30, 2004, Alexander filed a formal charge with the EEOC, alleging continuing discrimination based on retaliation. On January 31, 2005, Alexander received a right to sue letter from the EEOC. He commenced the present suit when he filed his initial complaint on April 29, 2005.

On May 29, 2007, the court issued an order in response to the Defendants' motion to dismiss the first amended complaint. *See Alexander v. Northeastern Ill. Univ.*, No. 05 C 2572, 2007 WL 1576130 (N.D. Ill. May 29, 2007). The court denied the Defendants' motion to dismiss Alexander's retaliation-based Title VII claim against NEIU, granted the motion as to all individual defendants, and also granted a motion to strike the request for punitive damages. *Id.* at *1. The court granted Alexander leave to file a second amended complaint, stating:

> Should Alexander wish to bring related state law claims against either NEIU or

---

*Ill. Univ.*, No. 05 C 2572, 2007 WL 1576130 (N.D. Ill. May 29, 2007) (Gottschall, J.); Report and Recommendation, No. 05 C 2572 (Aug. 3, 2007) (Keys, M.J.).

> the individual defendants, he must file an amended complaint within seven (7) days. In that complaint, he must separate each claim into individual, numbered counts. Each count must be in its own paragraph and supported by factual allegations.

*Id.* at *5. Alexander timely filed a motion for an extension of time, which the court granted, and subsequently filed his second amended complaint on July 23, 2007. He contemporaneously filed two documents: a "supplemental memorandum of support" and a "supplemental memorandum of law." On August 9, 2007, the court granted Defendants' oral motion to strike these additional documents without prejudice. The Defendants filed their second motion to dismiss, which is presently before the court, along with a second motion to strike.

## II. ANALYSIS

In his second amended complaint, Alexander adds claims for violations of the following four Illinois statutes and rules: (1) Illinois Human Rights Act ("IHR Act"), 775 Ill. Comp. Stat 5/2-105(B)(4)(e), *id.* 2-105(B)(5), and *id.* 5/6-101; (2) State Universities Civil Service System Rules ("SUCSSR"), Ill. Admin. Code tit. 80 § 250.110; (3) Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/15; and (4) Illinois Educational Labor Relations Act ("IELR Act"), 115 Ill. Comp. Stat. 5/14. *See* 2d Am. Compl. ¶ 6(a)-(e).

**A.     Motion To Dismiss [Document 151]**

The Defendants argue that the court should dismiss the state law claims added in Alexander's second amended complaint because the court lacks jurisdiction over the IHR Act and IELR Act claims, the state-law claims are time-barred, the Defendants are immune from suit, and Alexander fails to state a claim under the SUCSSR.

     1.     <u>Legal Standard: Rule 12(b)(1) and Rule 12(b)(6)</u>

Rule 12(b)(1) provides that a party may assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). "When reviewing a dismissal for lack of

subject matter jurisdiction, . . . a district court must accept as true all well-pleaded factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Nevertheless, the burden of proof lies with "the party asserting jurisdiction," namely, the plaintiff. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

Rule 12(b)(6) permits a defendant to assert by motion that the plaintiff's claim for relief fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As with a 12(b)(1) motion, the court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* __ U.S. __, 127 S. Ct. 1955, 1964 (2007). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to suggest a right to relief above the speculative level. *Id.* at 1973-74 & n.14; *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); *Concentra Health Servs., Inc.* 496 F.3d at 776 (citing *Twombly*, 127 S. Ct. at 1965, 1973 n.14).

2. Arguments

    a. **Jurisdiction Over IHR Act Claims**

Alexander asserts three claims under the IHR Act, alleging violations of the following sections: (1) 775 Ill. Comp. Stat. 5/2-105(B)(4)(e), which requires the appointment of a full-time Equal Employment Opportunity officer who makes "any aggrieved employee . . . aware of his or

her remedies under this Act" and allows certain State employees to be accompanied at a proceeding by a lawyer or "a representative of an employee organization whose membership is composed of employees of the State and of which the employee is a member."; (2) *id.* 2-105(B)(5), which requires the establishment, maintenance, and carrying out of a sexual harassment program; and (3) *id.* 6-101, which bars retaliation against employees who have "opposed that which he or she reasonably and in good faith believes to be unlawful . . . sexual harassment in employment . . . or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act" or the aiding, abetting, or coercion of others to violate the Act. 2d Am. Compl. ¶ 6(a)-(b). The Defendants argue that the district court has no jurisdiction over the IHR Act claims because exclusive jurisdiction lies with the Illinois Human Rights Commission ("IHR Commission"). In response, Alexander makes an argument regarding his right to intervene in an ongoing case brought by the EEOC. However, he is the plaintiff in the case and the EEOC is not a party; therefore the argument is inapplicable.

The IHR Act provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111(D) (2008). The Defendants argue that this strips the courts of jurisdiction over IHR Act claims. Such an argument is not strictly accurate. As of January 1, 2008, the IHR Act allows a plaintiff to file a complaint alleging violations of the IHR Act directly in state circuit court. *Id.* 5/8-111(A); *id.* 5/7A-102; 2007 Ill. Laws 243. However, the amendment applies only "to charges filed on or after the effective date" of the IHR Act: January 1, 2008. *Id.* 5/7A-102(J). Alexander filed a Charge of Discrimination with the Illinois Department of Human Rights in April 2004. Therefore, as to the facts of this case, the

Defendants are correct that the court lacks jurisdiction to do anything other than review or enforce final orders of the IHR Commission. *Id.* 5/8-111(B)-(C); *Talley v. Wash. Inventory Serv.*, 37 F.3d 310, 312-13 (7th Cir. 1994).

Alexander has not pled any facts or attached any exhibits that indicate he seeks to have the court review an IHR Commission final order. Rather, he invokes claims under the IHR Act as though they may be heard in district court. Thus, to the extent that Alexander seeks to have the court decide whether the Defendants have violated the IHR Act, his claims are dismissed with prejudice. To the extent that he seeks to have the court assert supplemental jurisdiction and review an IHR Commission final order, the claims are dismissed without prejudice, subject to an amendment that sufficiently puts the Defendants on notice of the content of the IHR Commission final order.

### b. Jurisdiction Over IELR Act Claims

Alexander asserts a claim under the IELR Act, 115 Ill. Comp. Stat. 5/14(a), which bars certain unfair labor practices including interfering with an employee's exercise of rights under the IELR Act and discriminating against an employee for filing a complaint under the IELR Act. 2d Am. Compl. ¶ 6(e). The Defendants argue that the district court has no jurisdiction over IELR Act claims because exclusive jurisdiction lies with the Illinois Educational Labor Relations Board ("IELR Board"). In response, Alexander reasserts his inapplicable argument about intervention in an EEOC action.

The IELR Act "establishes procedures governing collective bargaining arrangements between public educational institutions and their employees . . . ." *Tavernor v. Ill. Fed'n of Teachers*, 226 F.3d 842, 844 (7th Cir. 2000). It explicitly establishes the procedure for challenging an alleged unfair labor practice. *See* 115 Ill. Comp. Stat. 5/15; *id.* 5/16. Under that

procedure, an individual may file a charge with the IELR Board, which then determines whether to issue a complaint against the employer. *Id.* 5/15. A decision by the IELR Board not to issue a complaint is appealable to the appellate court on administrative review. *Id.* 5/16.

Alexander alleges a violation of the IELR Act itself: retaliation for filing an IELR Act grievance. *See* 2d Am. Compl. ¶ 6(e); Letter from Santos Rivera, Ex. to Compl., provided as Ex. A to Defs.' Mem. in Supp. of Mot. to Dismiss. The IELR Board has exclusive initial jurisdiction over such a claim. *See, e.g.*, *Bd. of Educ. v. Warren Twp. High Sch. Fed'n of Teachers*, 538 N.E.2d 524, 529 (Ill. 1989) (observing that the IELR Act "creates rights and duties which were unknown to the common law" and that the legislature "was free to limit the circuit courts' jurisdiction" over matters covered by the Act).

It is unclear whether Alexander is attempting to appeal an adverse IELR Board final order; but, even if he is, federal court would not be the correct forum for such an appeal. *See* 115 Ill. Comp. Stat. 5/16(a) (providing for judicial review of an IELR Board final order by the "Appellate Court of a judicial district in which the [IELR] Board maintains an office"). Nor is it evident from the face of the complaint that Alexander is attempting to raise issues that fall outside the exclusive jurisdiction of the board. *See, e.g.*, *Tavenor*, 226 F.3d at 846 (considering constitutional challenges to a union's fair share fee collection procedure); *Semmens v. Bd. of Educ.*, 546 N.E.2d 746, 749 (Ill. App. Ct. 1989) (finding that the IELR Board did not have exclusive jurisdiction over an employer's failure to comply with the school code because such compliance was not enumerated in the IELR Act). He simply alleges violations of the IELR Act. Thus, the court lacks jurisdiction and dismisses the IELR Act claims with prejudice.

        **c.**     **The SUCSSR And Due Process**

Alexander asserts a claim under the SUCSSR, Ill. Admin. Code tit. 80 § 250.110, which

details the circumstances under which an employer may suspend an employee as a disciplinary measure. 2d Am. Compl. ¶ 6(c). Reading the complaint liberally, Alexander is alleging that the reasons he was given for his suspensions were pretextual and that the suspensions were, in fact, retaliation for his sexual harassment complaints. Alexander admits that he took the appropriate steps under NEIU's grievance procedure to alert the defendants to his belief that his suspension was unfairly imposed. *Id.* at 2:22-3:2. The Defendants argue that the district court has no jurisdiction to review decisions to impose disciplinary suspensions or the way in which a grievance procedure was conducted and that Alexander's sole recourse, which he admits he took, was to file a grievance.

Section 250.110 details the various "[c]auses justifying suspension," which include unauthorized and unexcused absence, misrepresentation of absence, failure to follow time schedules, insolence, disregard of safety regulations, and sleeping during working hours. *See* Ill. Admin. Code tit. 80 § 250.110(d)(3). Directly following the section, the following text appears:

> AGENCY NOTE: It is to be noted that an employee's allegation that a Disciplinary Suspension was unfairly imposed is subject to the grievance procedure established by the employing institution but is not reviewable by the Civil Service System.

*Id.* The Defendants read this note as foreclosing Alexander's rights to go outside of NEIU to complain about his suspensions. They base their conclusion on the fact that the section of the SUCSSR that deals with discharges specifically provides for an administrative review process, but the suspension provisions do not. *Compare id.* § 250.110(d) (stating that allegations of unfair imposition of suspension is subject only to the employer's grievance procedure), *with id.* § 250.110(e)(18) (providing for administrative review of final decisions of the Merit Board regarding discharge decisions). The Defendants may be correct that the absence of an explicit provision means that the court would have no jurisdiction over a grievance. But the court need

not decide that issue because Alexander is not raising a complaint under the SUCSSR; he merely quotes the Agency Note to explain his theory of how his due process rights could be violated with impunity because the SUCSSR does not provide for outside review of an employer's grievance procedure. The court reads Alexander's claim to be that NEIU and the individual defendants violated his due process rights by inadequately dealing with his grievance, and that they could do so with impunity, even when "NEIU was intentionally and knowingly not in compliance [with the SUCSSR]," because the SUCSSR does not provide for outside review of decisions. *See* Pl.'s Resp. at 3.

The Defendants, in reply, move to strike Alexander's due process argument because the court granted leave only to add state law claims and Alexander asserts his due process claims under the U.S. Constitution.[2] The Defendants offer no arguments that a due process *constitutional* challenge is foreclosed by the absence of a provision allowing judicial review of an agency's *substantive* decisions made under the statute or associated rules. *See, e.g.*, *Turner v. Henman*, 829 F.2d 612, 614 (7th Cir. 1987) (finding that a plaintiff could state a cause of action notwithstanding the fact that decisions of the parole board are "committed to agency discretion" as long as "the procedures actually used by the Commission violated the Constitution"); *Altman v. City of Chicago*, No. 99 C 6496, 2000 WL 1648932, at **5-6 (N.D. Ill. Oct. 25, 2000) (denying a motion to dismiss due process claims where the plaintiff claimed a retaliatory misuse of disciplinary procedures and personnel rules). Taking into consideration Alexander's *pro se* status, the court concludes that Alexander asserted the claim in good faith and he should not be

---

[2] Alexander asserts claims under both the Fifth and Fourteenth Amendments. The Fifth Amendment prohibits a deprivation of life, liberty, or property without due process of law by the federal government, but NEIU is a state agency. U.S. Const. amend. V. However, as a state agency, NEIU must comply with due process under the Fourteenth Amendment. *Id.* amend. XIV.

penalized for asserting an otherwise valid claim. Therefore, the court reads Alexander's invocation of the SUCSSR as a claim for violations of the Fourteenth Amendment due process clause. Such a claim would be brought pursuant § 1983, which provides that "[e]very person who, under color of statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." *See* 42 U.S.C. § 1983.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Although Alexander does not explicitly state the interest that is constitutionally protected, the court reads his complaint to state that he has an interest in a fair procedure to evaluate grievances about suspensions. To succeed on his substantive due process claim, Alexander would have to show that NEIU "deprived [him] of a liberty deeply rooted in our history and condition." *Khan v. Gallitano*, 180 F.3d 829, 834 (7th Cir. 1999). The right to a fair administrative grievance procedure cannot be considered a fundamental right; therefore, Alexander's substantive due process claim fails. The Fourteen Amendment also "affords state citizens with the right to notice and an opportunity to be heard before being deprived of 'property' as defined by state law." *Taake v. County of Monroe*, ___ F.3d ___, 2008 WL 2437619, at *4 (7th Cir. June 18, 2008). Alexander's property right in his state employment was taken away when he was suspended without pay, so he had a right to notice and a hearing before the suspension. It is unclear what process he was afforded. Plaintiffs in procedural due process cases may not obtain monetary damages but may obtain the remedy of process, that is, notice and a hearing. *Id.* Without doubt, Alexander seeks monetary compensation, but he is also seeking to "recover a loss of reputation"

and to be "made whole." *See* 2d Am. Compl. at 10. Such a "loss" could be "made whole" by determining whether the procedure afforded Alexander prior to his suspensions was fair, and, if not, requiring fair grievance procedures in the future. Thus, his procedural due process claim is plausible, if inadequately plead.

The issue now becomes whether Alexander can state a claim under § 1983 against NEIU or any of the individual defendants. The Defendants argue, correctly, that NEIU is immune from suit pursuant to the Eleventh Amendment.[3] *See* U.S. Const. amend. XI (barring suits against the states); *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1184 (7th Cir. 1982) (dismissing a § 1983 claim against a state agency because the agency was "immune from federal damages liability by virtue of the Eleventh Amendment"); *Alexander v. Northeastern Ill. Univ.*, No. 05 C 2572, 2007 WL 1576130, at *4 (N.D. Ill. May 29, 2007) ("NEIU is an agency of the State of Illinois"). There is no support for Alexander's contention that the issue of immunity cannot be resolved until trial: the court may determine immunity as a matter of law and should do so before it reaches the merits of a claim. *See Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 874 (7th Cir. 2006) ("[S]tate sovereign immunity is the kind of preliminary question that should be resolved before the merits of the claim."). The Eleventh Amendment bar covers "suit[s] by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Therefore, to the extent that Alexander seeks monetary damages against NEIU (or any other party who would be indemnified by the State), his

---

[3] They also argue, correctly, that NEIU is not a "person" for the purposes of § 1983. Consequently, Alexander may not assert a § 1983 claim against NEIU. *See* 30 Ill. Comp. Stat. 5/1-7 (including universities within the definition of "state agencies"); *Kaimowitz v. Bd. of Trustees of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991) (holding that "a state university is not a person within the meaning of § 1983 and therefore [is] not subject to suits brought under § 1983"); *Alexander v. Northeastern Ill. Univ.*, No. 05 C 2572, 2007 WL 1576130, at *4 ("NEIU is an agency of the State of Illinois").

due process claim is dismissed with prejudice.

Section 1983 does not provide immunity where a plaintiff sues individual state officials for prospective declaratory or injunctive relief to remedy ongoing violations of federal law. *See MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 345 (7th Cir. 2000). As previously mentioned, Alexander's prayer for relief is broad enough to be construed as a request for non-monetary relief. He alleges that "NEIU's *agents* and agencies" have "abused the powers given them." 2d Am. Compl. at 8:16-17 (emphasis added). Thus, Alexander obviously seeks to hold some individual responsible. However, he does not state which individual defendants are "agents" for purposes of the grievance procedure or provide sufficient facts to provide fair notice to the "agents" of the nature of the claims against them. Consequently, the procedural due process claims against individual "agents" must also be dismissed pursuant to Rule 12(b)(6), but without prejudice.

### d. The IWA

Alexander asserts a claim under the IWA, 740 Ill. Comp. Stat. 174/15, which prohibits retaliation against an employee who shares information with various bodies that discloses a violation of State or federal laws, rules, or regulations. 2d Am. Compl. ¶ 6(d). Alexander alleges that NEIU and its employees retaliated against him because of his allegations of sexual harassment by his supervisor. The Defendants argue that Alexander's IWA claims are preempted by the IHR Act. Alexander makes no argument in response. The Defendants' argument relies on statutory language of the IHR Act as well as *Bell v. LaSalle Bank N.A.*, No. 03 C 607, 2005 WL 43178 (N.D. Ill. Jan. 10, 2005).

The Illinois Supreme Court has found that "the legislature intended the [IHR Act], with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source

12

of redress for alleged human rights violations." *Mein v. Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985). Where a claim is "inextricably linked" to an alleged violation of an employee's civil rights, it is preempted by the IHR Act. *See Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994) (finding that, pursuant to the IHR Act, the court had no jurisdiction over negligent hiring claims that were "inextricably linked" to allegations of sexual harassment). The IHR Act specifically prohibits retaliation against an employee "because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful . . . sexual harassment in employment . . . or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding or hearing under this Act[.]" 775 Ill. Comp. Stat. 5/6-101.

In *Bell*, the only case to directly address this preemption issue, the court found that it lacked subject matter jurisdiction over a claim under the IWA because it was preempted by the IHR Act. *Id.* at *3. The IWA claim alleged retaliation against employees for their complaints to their employer about racial discrimination. *Id.* at 2. The court noted that the claim "would be a nullity" without reference to the IHR Act, which "specifically prohibits employers from retaliating against a person" for unlawful discrimination. *Id.* at **2-3. The situation at bar is almost identical. The IHR Act specifically bars retaliation against employees for objecting to sexual harassment or filing official grievances. Alexander's complaint does not appear to allege any violations of laws or rules that would not be covered by the IHR Act (for example, tax evasion or environmental pollution). Rather, his whole complaint centers on the actions of NEIU and certain individuals after the initial sexual harassment incident. Thus, the court finds that Alexander's IWA claims for retaliation are "inextricably linked" to matters covered by the IHR Act and that the IHR Act divests the court of jurisdiction over this claim. As a result, the court

does not reach the Defendants' arguments regarding immunity.

### e. Defendants' Remaining Arguments

The Defendants make two further "global" arguments: (1) Alexander's claims are time-barred; and (2) the individual defendants are entitled to public official immunity. Alexander contends that he is entitled to toll the statute of limitations and that immunity may be determined only at trial. Because all the newly-added claims have been dismissed, either for want of jurisdiction or for failure to plead sufficient facts to place the individual defendants on notice, the court does not reach these remaining arguments.

### B. Motion To Strike [Document 154]

The Defendants ask that the court strike from Alexander's second amended complaint: (1) the punitive damages request; (2) any other previously dismissed claims; (3) page eight, line thirteen through page ten, line thirteen; and (4) "any other immaterial, impertinent and redundant allegations." Defs.' Mot. to Strike at 3.

#### 1. Legal Standard: Rule 12(f)

Upon timely motion by a party, a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2). Because "extraneous allegations . . are entirely ignorable," the Seventh Circuit has "advise[d] defense counsel against moving to strike extraneous matter unless its presence in the complaint is actually prejudicial to the defense." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001). Despite the disfavored status of a Rule 12(f) motion, a court may properly strike matter when it "has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party." *Anderson v. Bd. of Educ. of City of Chicago*, 169 F. Supp. 2d 864, 868 (N.D. Ill. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure, § 1382).

    2.    Arguments

In deciding the Defendants' motion to dismiss Alexander's first amended complaint, the court dismissed all claims against the individually-named defendants and struck the request for punitive damages. When Alexander filed his second amended complaint, he changed very little from the first amended complaint, other than to add state law claims. *See* 2d Am. Compl. ¶ 6. For this reason, the Defendants seek to strike certain language from the complaint.

The Defendants argue that Alexander failed to follow the court's directions in pleading his state law claims. In response, Alexander argues that he followed the court's instructions and points the court to the memoranda submitted with his complaint. However, those documents were stricken from the docket and appear to contain nothing more than legal argument. The Federal Rules of Civil Procedure specify how a complaint must be presented and, notwithstanding his *pro se* status, Alexander is expected to comply. *See* Fed. R. Civ. P. 7(a) (outlining allowed pleadings); *id.* 8(a) (explaining the necessary content of a complaint); *id.* 10 (detailing the form of pleadings); *id.* 11 (specifying penalties for non-compliance with rules).

The Defendants also argue that Alexander continues to include material stricken by the court. Alexander admits that he did not delete anything from his first amended complaint and explains that he did so to preserve his claims (presumably for appeal). His understanding of the need to replead is mistaken. "[D]ismissed claims need not be included in an amended complaint, because the final judgment brings up all previous rulings in the case." *Smith v. Nat'l Health Care Servs. of Peoria*, 9334 F.2d 95, 98 (7th Cir. 1991) (citing *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 682-83 (7th Cir. 1990)). Therefore, Alexander "did not have to replead the claims in order to present them on appeal." *Id.*

15

The court now turns to whether the matter should be stricken, which involves a consideration of whether the Defendants will be prejudiced by the complaint in its current form. The Defendants ask the court to strike the previously dismissed claims against the individual defendants. As Alexander's complaint does not clearly delineate claims or counts, the court is unclear what could be stricken. Nevertheless, to avoid confusion of the issues, Alexander must make some changes when he files his third amended complaint: the names of the individual defendants must not appear in the caption. The name of the case is, at this point, *Michael S. Alexander, Plaintiff v. Northeastern Illinois University, Defendant*.[4] This does not mean that Alexander must delete the references to individuals from the body of the complaint; the facts about the alleged sexual harassment and retaliation are relevant to his Title VII claim. The only change Alexander must make is to the caption.

The Defendants also ask the court to strike the punitive damages request. Alexander did not change the amount of damages sought in his second amended complaint: it remains at $1 million. Nor did he remove the language that stated that he seeks punitive damages. *See* 2d Am. Compl. at 10:12-16. The court again strikes Alexander's punitive damage request from the complaint. Alexander must delete it.

Finally, the Defendants ask the court to strike almost two pages of text that does not contain facts or state legal claims. *See* 2d Am. Compl. at 8:13-10:13. One page seems to be a scanning error and that is stricken. *See id.* at 9 (cover sheet of complaint). The remainder of the text is Alexander's commentary and conclusions regarding the court's obligations, the actions of the Defendants, and Alexander's feelings. Although such commentary is unrelated to the merits of Alexander's claims, it does not rise to the level of prejudice to the Defendants. Rule 8(b)

---

[4] If Alexander repleads his due process claim against individual state official for prospective declaratory or injunctive relief, then that individual's name may appear in the caption.

provides a means by which the Defendants may address the superfluous allegations, should Alexander choose to replead them. *See* Fed. R. Civ. P. 8(b).

**C.     Assistance of Counsel**

As previously observed, Alexander's filings are difficult to follow. Also of concern is the fact that this case is three years old and Alexander has yet to file a complaint that conforms to the Federal Rules of Civil Procedure or that allows him to advance past the motion to dismiss stage. The court has no information on whether Alexander has ever sought counsel or if he is financially able to do so. He may have a right to appointed counsel if he wants a lawyer, has unsuccessfully attempted to find one, and is financially precluded from doing so. *See* 28 U.S.C. § 1915(e)(1); *Johnson v. Doughty*, 433 F.3d 1001, 1006-07 (7th Cir. 2006). In order to determine how best to proceed with the case, the court orders Alexander, within 21 days, to file with the court either: (1) an appearance form from retained counsel of Alexander's choice; (2) a financial affidavit and application for appointed counsel (forms are available from the Clerk's office), fully filled out with accurate information on finances and Alexander's efforts to find counsel for the court's review; or (3) a short statement (maximum two pages) stating that he wants to continue to prosecute the case *pro se*. The court will review the documents and issue a further order to inform the parties how to proceed.

### III. CONCLUSION

For the reasons stated above, the court grants the defendants' motion to dismiss as follows: (1) claims brought under the Illinois Human Rights Act, Illinois Whistleblower Act, and the Illinois Educational Labor Relations Act are dismissed with prejudice for want of jurisdiction; (2) claims brought for review of final orders of the Illinois Human Rights Commission are dismissed without prejudice; and (3) claims brought pursuant to the Fourteenth

Amendment and relating to the State Universities Civil Service Act Rules are dismissed with prejudice as to NEIU and without prejudice as to individual state officials. Plaintiff's claim against NEIU for retaliation in violation of Title VII stands. The defendants' motion to strike is granted only as to the deletion of dismissed defendants from the caption and the request for punitive damages, and is otherwise denied. Alexander is directed to file a statement with the court within 21 days as stated above.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 23, 2008